2532 Hunt Construction Group, Inc. v. Berkley Assurance 2532 Hunt Construction Group, Inc. v. Berkley Assurance Company Good morning, Your Honors. My name is Michelle Megden from Cohen, Ziffer, Frenchman & McKenna. I represent Plaintiff Appellant Hunt Construction Group. Hunt is a construction manager whose only job is to perform professional services on large construction projects across the United States. Hunt paid substantial premiums for years to Berkley in order to get professional liability insurance for just such projects. However, when such claims arose, and here we have two separate claims on two projects, the Fairmont-Austin and the Houston-Methodist claim, Berkley refused to comply with its very broad duty to defend Hunt under its policies. The District Court below erred on a number of points, any one of which could be reversed to find a ruling for Hunt, but three points in particular. First, the District Court in Berkley wrongly held that Hunt's notice was late. It was not. Number two- That's assuming that the February 17th letter should have been turned over to Berkley. Is that what you refer to? Correct. That's wrong. Number two, even if there was a validity to the late notice defense, it was waived under longstanding New York Court of Appeals authority. And three, on the Houston-Methodist claim, they were wrong to find that there was no duty to defend when the complaint was replete with allegations of negligence and mismanagement. Now, on the Austin-Fairmont claim to start, to step back and give a little bit of context, this is not a case in which Hunt received a lawsuit and sat on its rights. Instead, this is a case where Hunt was sued during the 1819 policy period, it provided timely notice to Berkley shortly thereafter, and Berkley instead looked back to find the February letter that you were referring to and say, aha, we have a basis to deny coverage because there was an earlier letter in a period that we also provided coverage. The point is, what the New York Court of Appeals teaches, is that you can't create coverage if it's not there. And that's what you're asking us to do. That's what you're asking Hunt is asking Berkley, to create coverage if it wasn't already there. You can't do that. Correct. That's actually on the waiver point, and that is very correct. The New York Court of Appeals in Schiff, 40 years ago, stated that there's two different kinds of defenses an insurer could have, some that may be waived and some that may not. It said that things relating to the existence or nonexistence of coverage, meaning the type of claim, the parameters of what's covered, here a professional liability claim, in a different policy a securities claim, that can't be waived because that would create coverage. However, it made a very clear distinction, that when there's a condition precedent to coverage, it may be waived. And it gave the specific example of a timely notice of loss. That is exactly what we have here. And what case are you referring to? What page? No, what case? This is the Schiff case. The Albert Schiff v. Flack case from the New York Court of Appeals. It's an old case, right? Yes, 1980. Well, then not old. It's old in terms of law. It's all about perspective. Anyway, the Schiff case made very clear that conditions precedent to coverage could be waived. That is something that the insured must do in order to secure its coverage. And if it doesn't do it, it will forfeit it, or it might be waived. For example, if there's a professional liability case that's covered, and it gives notice within the period, it gets coverage. If it doesn't give notice, it doesn't. It's within the insured's control. It's an act, something the insured must do, or it forfeits coverage. The New York Court of Appeals made very clear that can be waived. It repeated that in NYU v. Continental, 15 years later. This court repeated that in Galleon v. Connecticut, where there's a condition precedent to coverage. Now, Berkeley makes the argument that there's some sort of difference between a late notice defense that's the prompt notice, do it promptly, versus within the policy period. We submit that there's no difference, and both can be waived. How do we know that? First, the plain policy language, which you have to look at in the policy, tells us so. In the Reporting a Claim provision, 10a, it says, it is a condition precedent to coverage that you must report the claim in writing, as soon as possible, and within the policy period. Secondly, it functions as a condition. As I told you, it's the type of thing that the insured must do in order to get coverage for the type of claim that would otherwise be covered, and if not, it doesn't get it. Berkeley will say, well, it appears also in the insuring agreement, so that must make it different. But it does not, under New York law, J.P. Morgan v. Vigilant, Morrissania, the placement of a provision within an insurance policy does not change its function. And if you look at the Schiff case that I mentioned, footnote 2, it specifically says you cannot take a condition and label it as something else, and therefore make it not a condition. And this is a condition here, because it relates to the timing in which something must be made. You're not arguing ambiguity here, are you? Sorry? You're not to the waiver. That's a legal question. And one more point on waiver, and I'll turn to the factual questions. The cases that the court relied on below, we believe, were erroneous. If you look at the very first one, Kallos-Cerinos in the Western District of New York, it gave one sentence in which it said the timing of notice can't be waived, which is directly contrary to what the Court of Appeals held in Schiff. It didn't give any reasoning or reasons that were relied on below, simply repeated that statement without much analysis. And I've given you the analysis here as to why that's incorrect, and the waiver argument should apply. But to turn back for a second, even besides waiver, we don't believe notice was late in the first place. Why? Because the February letter that you referred to did not ask for any type of relief that could be covered by insurance. But didn't it say everything that they later complained about? Poor morale, not funding enough staff, no good oversight. Can't you trace it all to the February 2017 letter? It talked about those types of things, but those types of things do not rise to the level of a claim- Why not? Because there's nothing for the insurer to do. There's no sorts of relief that you can say, ancillary receivership, New York Court of Appeals, it says a claim is something that can be defended, settled, or paid by the insurance company. Here, the February letter was very clearly saying, Hunt, do better at your job. It says, I believe at the very end, you must live up to your expectations. You must meet the contract. Finish the contract on time, and we all have deep-rooted expectations this will get done. So it's not seeking any relief at that time that could be covered by insurance. Where in the policy does it say that you've got to seek- that the relief must be sought? The definition of a professional claim, which is what needs to be noticed, seeks damages or correction of professional services. So where is the word relief? Or correction of professional services? Correct. Correction of professional services. Correction is undefined, so you have to look at it through the reasonable expectations of the insured, and through New York law. And that's where the relief concept comes in. It's ambiguous on its own, but you have to look at it through this lens. And I submit that this letter is actually best a notice of circumstance, which under 10B of the policy can be noticed if Hunt chose to, but it's not required to be noticed. And a notice of circumstance is something that may lead to a claim down the road, not something that is yet a claim. So they say that if they were required to send this, the insurance company would be inundated with paper all the time? Correct. It would have been prudent, will you not agree, to just send that letter to Berkeley? I don't agree, because there's nothing in that letter for Hunt to know that it should do so. And for the exact reasons you said, that would lead to everything during a construction project. This is an ongoing project. There are going to be constantly types of disagreements, complaints. The nails aren't straight. Let's fix them. They get fixed the next day. How do you know which things to send? It would lead to unusual, impractical results and be absurd. Would this qualify as a mitigation cost under the policy? Sorry? Would this qualify as a mitigation cost under the policy? I'm not sure. What qualifies as a mitigation cost? So there is a provision. The policy defines mitigation costs as reasonable and necessary fees or direct costs incurred to mitigate or rectify professional services. I believe mitigation costs are a different part of coverage, not the coverage that we're seeking for professional liability coverage. I appreciate that, but would this qualify as a form of mitigation costs? The relief in the February letter? Is that what you're asking? Yeah. Well, you call it relief. Whatever you want to call it. It's not relief. Sorry. And mitigation, off the top of my head, since this wasn't raised below, I don't recall what the definition of mitigation cost was, but I will. It doesn't seem to me like that would fall under that. But your first answer is this wasn't argued below? Correct. All right. You've reserved one minute, and you'll have time to reflect on Judge Lauier's question during that minute. I will. Thank you very much. Mr. Stern. May it please the Court, I'm Max Stern of Duane Morris, representing Apelli Berkley Assurance Company. Berkley respectfully submits that the district court order by Judge Hopkins should be affirmed granting summary judgment to Berkley. You mean after the district court changed its mind? After the district court changed its mind. It's correct that... What about the principle that we should interpret insurance policies if there's a question against the drafter of the policy, which is the insurance company? That is a principle of law when you're dealing with an actually ambiguous provision. The notice provisions that we're talking about, the related claim provisions we're talking about, these are all things that have been construed before and found unambiguous by the New York courts. But the question is whether the February 2017 letter was something that should have been turned over. Yes. That's a question, right? Well, there is a, that's a question that's being argued over at this time, but we don't think there's any reasonable question. There's no two ways, there's no two reasonable ways to look at it. It's kind of Orwellian to think that a notice of claim, a document titled notice of claim, is not a claim. Especially when it does demand... This wasn't entitled notice of claim. It absolutely was, Your Honor. The February 2017? Yes. It's notice of claim. I will look at it. I'm sure I have it. It's a three-page document. The first page says it right there in the... So there's not, this isn't the question of many letters that transfer over the time of a construction project, which none of which is in the record, by the way, that that's a problem. This is a notice of claim document that was meant to submit a contractual claim between two contracting parties. It demands corrective action, unquestionably. You know, Judge Ocken found that from the get-go, that it was a claim, and it says it, he highlighted it in his own opinion. We've highlighted it in our briefs. They demand that things be done, that professional services be done to address the gap in professional services up to that point. But you heard counsel say that they were not asking for anything specific, but do better. Please do this job better, is what they were asking. Well, they did ask for something specific in terms of more staffing, and they wanted more people, they wanted better supervision, they wanted to do better. Do better, right. Right, do better. But that is a demand for corrective action when you're doing professional services, when your job is supervising. That's a very broad, that's a very broad concept of correction. So, if you're the insured, and I'm the insured, and someone, you know, some consumer says, I'd like a better hamburger, is that a, is that a correction? Where do we draw the line on the word correction? Because eventually it becomes absurd. Do you agree with that? Well, I think that there could be a world in which it could become absurd. But we're not talking about hamburgers here, we're talking about large construction projects, sophisticated projects. I'm using a simple example, but as I understand it, under your definition, that might actually qualify. That if a, if a, if a contracting party asks for the insured to do X, Y, or Z by way of some improvement, any improvement, that qualifies, as I understand it, as a correction under your view. Am I right or wrong about that? I think that where a customer asks for something to be done, that yes, that can qualify as a claim. And there could be a, a broad spectrum of this. There's, you know, that's what we look at. Where's the line? Where's the line? What we know is, Where's that line? When someone sends you something that says, this is a notice of claim, that that's on the side of the line of a claim. And it's important to understand the perspective of this coverage. It's a broader coverage than just covers a claim which is a lawsuit. It covers claims when your customer demands something of you. When they say, I'm making a contractual claim, but what they're really saying is, your services are inferior and things have happened. And these things that have happened, they're not just like, it's not just generally do better. It was a list of examples. And I said, these are only examples. Things are going wrong everywhere. But they're like, you know, we've got an elevator that doesn't work. We've got rain intrusion. We have a roof that's incomplete. There's a long list in that very short letter of very, of examples of the kinds of problems. I'm sorry. Where's the letter again? It's at 722. Got it. Sorry. 772. Okay.  That's how it starts. And it says the first page at the end. There's a few examples of the issues affecting construction. And it gives a number of examples, one through seven. So this is not just, there's a problem with a hamburger. What happened here is... I'm sorry I used the hamburger. I know. But, you know, these are big problems. And when the owner comes to you on a big project and says, it's gone too far. I'm making a notice of claim. Here are all the kinds of things that are going wrong. You're not staffing this. You're not supervising it. You're not coordinating. We're having to do all that ourselves and we're not doing a good job because we're not as good as you. And you're distinguishing between a notice of claim and what you described as some phenomenon which is taking place on the site of the construction. Correct. For those of us who are on the district court and first encountered these issues in construction cases, there's a lot of being written every single day on a construction site, right? One of those vans that we never understood what they were for. So, are you suggesting that that's a separate set of complaints, but they don't rise to the level of a claim? I would say that Berkeley has insurers that tender written demands they receive that might come out of one of those white vans. But when you get a written... The definition of professional claim is limited to written demands. So, it's something that we can look at and we can evaluate and say, is this a serious demand for money or corrective action? And this was a serious demand. But you've been pointing out, I mean, the reason I want to see it again was you've been emphasizing the fact that it says notice of claims in the reline. If it had not said that, first you would agree that that would be a close call? I take it? No. I don't think this letter is not a close call. I feel like from what I see, this is not like the things that are discussed in the cases that were cited by my colleague across the aisle. These are... Those are, you know, the attorney may have done something wrong. They're very vague statements. This is not a set of vague statements. This is a call to action. It talks about the potential for catastrophic failure. It's a warmest language that's in this letter. So, whether or not it had the reline that said notice of claim or not, whether or not the contractual claim provisions were invoked or not, we would think this is a notice of claim. But given that it did say that, given that it's clear that this is the equivalent between the two contracting parties of filing a suit or beginning arbitration, they've commenced a contractual rights process. So action is being taken and a demand for corrective services is being made. And the way that corrective services happen in this world is more people, more knowledgeable people get put out by a construction manager to supervise more carefully. And that's what's complained of in all of the later arbitration demand and petition. Counsel, you heard me ask your friend across the aisle whether it would have been more prudent to send the February 2017 letter to Berkeley. And she answered no, because there was nothing that would have directed her to send it to Berkeley. And, in fact, the letter is pretty chatty. They talk about the early setback with the weather. They don't say do this, this, and this. They just say try to do better, which is not my idea of what a claim should state. Well, I would agree that certain portions of the letter are trying to maintain the relationship between the parties. But I think that where a demand for corrective action, where we have this broader coverage- Show me where the demand is. I now have the letter in front of me. Where is the demand for corrective action? It says that- What are you reading? On which page? I'm looking at page two. It's a 773. Yeah, I'm sorry, 773. And- You don't regard the letter of February 16, 2017 as chatty. I don't regard it as chatty. I believe it's a notice of claim, and I see this kind of wording between owners and contractors who are trying to work together, but they're at their wits' end. But they're still- These are all people who work together on site, and they have to live with each other, so they try to be friendly. This is a letter with underlines and bolds and agreements. It's a contractual trigger letter. It's not a chatty letter, in our view, in the view of Berkeley. And it says, advising the construction manager of the continued failure to meet significant deadlines, adequately supervise its contractors, and to take the actions necessary to remedy the current status of the project. And that was identified by Judge Atkin as being a demand. We view it as a demand for corrective services, to take those actions that hadn't been taken before. The prior paragraph says, owner has raised these issues with you before, yet no observable progress has been made. Now, those prior raising of the issues, those might be in the world of where we might have some question about whether it's a claim. Once we get the notice of claim document, they demand that you do more, which is, in their world, put more people on the job, and it doesn't happen. That's what led to the entire set of problems that we have, is the prior delays that had accumulated over time. And remember that the multiple claim wording here depends on whether it arises out of related circumstances. There is a logical relationship between the circumstances that are raised here in this notice of claim and the facts that happen later. Thank you, Mrs. Stenner, very much. Ms. McDonald? You have one minute. Yes, a couple things really quickly. First, we're focusing on the notice of claim title in the February letter. Be very clear, it says notice of claim under the construction contract, not notice of claim under the policy. That's very different. And, in fact, it proves our point that it's just part of the regular part of the construction of this project that they're raising certain issues. Secondly, mitigation costs. To the extent I can look at that very quickly, I believe it's a different type of coverage under the policy that you could seek, permissive, not required, for fees and costs to fix something while it's going on. And it's like, in my view, the notice of circumstance that I was referencing before. But this was not argued at all. Correct. Nor did, I think it's again permissive, Hunt didn't seek coverage as a mitigation cost under the policy. I see your friend on the other side shaking his head yes, okay. And lastly, the Houston Methodist claim, which we didn't get to. I just wanted to say that was a complaint where Berkeley had a duty to defend. It was full of negligence allegations. The court was wrong in saying that it only looked at the causes of action and not reading all the allegations throughout the complaint, which were full of negligence and mismanagement, which are covered under the policy. And, therefore, Berkeley had a duty to defend. Thank you very much. If it's a mix of those two things, that is a mix of allegations that sound in negligence and allegations that sound in intentional wrongdoing or misconduct, then does the policy apply? How does the policy apply? The allegations, there's plenty of negligence and mismanagement allegations throughout the complaint, as well as the causes of action, don't necessarily require intentional conduct. I appreciate that, but if it's a mix of those two things, what's the- Correct. Under longstanding New York law, if some allegations are covered and some are not, you have a duty to defend the entire claim. And we submit that's what Berkeley had to do here. Thank you. Thanks very much to both counsel. We appreciate the arguments very much. You seem urgently- I didn't have a chance to address the issue. Take 30 seconds. Go on. Very, very quickly on the issue of the Houston Methodist claim. To answer the panel's question, to the extent it's a mix, note that we're also relying on an exclusion, which would apply to a mix of types of claims together. And the exclusion says that anything that arises directly or indirectly out of a contractual obligation is excluded under Exclusion G. The court below didn't need to find that, but you can affirm based on Exclusion G, because that applies here. Thanks very much. We'll reserve the decision, and we are adjourned. Thank you. Thank you very much. Court is adjourned. Thank you.